# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORNELL HESTER, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 13-816-LPS |
| | : | |
| DAVID PIERCE, Warden, and ATTORNEY | : | |
| GENERAL OF THE STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

_____ _____ _____

Cornell Hester. *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

_____ _____ _____

# MEMORANDUM OPINION

September 28, 2016
Wilmington, Delaware

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Cornell Hester ("Petitioner"). (D.I. 2) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I.  BACKGROUND

On the night of February 4, 2010, Valerie Wilkins was exiting her car in front of her apartment when she heard bushes rustling and then observed Petitioner, her ex-boyfriend, running towards her. (D.I. 32 at 1) Petitioner was holding a paper with information about his father's funeral and screamed at Wilkins: "Look what you did to me, look what you did to my life." *Id.* Wilkins told Petitioner to get away from her, but he grabbed her and forced her back into her vehicle, taking her keys while striking her with his fists. Petitioner climbed into the driver's seat and attempted to start the car, hitting Wilkins when she tried to stop him. *Id.* Striking Petitioner with her shoe, Wilkins exited the vehicle and attempted to run away, but Petitioner struck her to the ground and began to kick and stomp on her head with his work boots. *Id.* at 1-2. When Wilkins attempted to get up, Petitioner grabbed her by the hair and began to pull her around the parking lot while striking her, screaming, "I am going to kill you." When Wilkins pulled away from Petitioner and screamed for help, Petitioner yelled at her to get back in the car or he was going to hurt her worse. When another resident screamed at Petitioner to get away from Wilkins, Wilkins fled to another apartment while Petitioner fled the scene. Wilkins was transported to an emergency room where she was treated for her injuries, including a deep laceration to the left side of her face. *Id.* at 2.

Between March 15, 2010 and June 21, 2010, after three separate cases and indictments were consolidated, Petitioner was indicted on the following charges: first degree carjacking, second degree kidnapping, second degree assault, carrying a concealed weapon, terroristic threatening, criminal

1

mischief, four counts of non-compliance with bond conditions, stalking, and criminal contempt of a domestic violence protective order. *See State v. Hester*, 2012 WL 3608713, at *1 (Del. Super. Ct. Aug. 21, 2012). Petitioner filed several motions to dismiss defense counsel and appoint new counsel, which the trial court dismissed as meritless at the final case review on August 9, 2010. (D.I. 32 at 2-3)

On October 11, 2010, at the request of defense counsel, the trial court ordered Petitioner to undergo a mental health evaluation to determine if he was competent to stand trial. *See* Hester, 2012 WL 3608713, at *1. After reviewing the mental health evaluation report in November 2010, the trial court concluded that Petitioner was competent to stand trial and scheduled trial for February 15, 2011. *See State v. Hester*, 2011 WL 664073, at *1 (Del. Super. Ct. Feb. 3, 2011). In January 2011, Petitioner filed two motions to dismiss the case, alleging violations of his speedy trial rights, excessive bail, ineffective assistance of counsel, and that he suffered extreme prejudice by undergoing three mental health evaluations. *Id.* The trial court denied these motions on February 3, 2011. *Id.* at *2-*3. On February 10, 2011, Petitioner pled guilty to second degree assault in exchange for the State dismissing all remaining charges. He was immediately sentenced to eight years of incarceration, suspended after five years. (D.I. 32 at 3)

Petitioner did not appeal. (D.I. 32 at 3) Instead, he filed a motion for transcripts on March 28, 2011, which the Superior Court granted on May 18, 2011, and he filed a motion for modification of sentence on April 18, 2011, which the Superior Court denied on May 13, 2011. (D.I. 32 at 3-4)

On September 19, 2011, Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Court Rule 61 ("Rule 61 motion"). *See* Hester, 2012 WL 3608713, at *1. He also moved for the appointment of post-conviction counsel and to compel additional transcripts and other materials; the Superior Court denied both motions. (D.I. 32 at 4) Petitioner

2

appealed the Superior Court's denial of his motion for transcripts, and the Delaware Supreme Court dismissed his appeal for lack of jurisdiction. (D.I. 34, *Hester v. State*, No. 174, 2012 Order (Del. Apr. 18, 2012)) On April 23, 2012, Petitioner filed a motion for correction of sentence, which the Superior Court denied on May 18, 2012. (D.I. 32 at 4)

On June 1, 2012, a Superior Court Commissioner filed a Report and Recommendation that Petitioner's Rule 61 motion should be denied. (D.I. 35, *State v. Hester*, Cr. ID No 1002002758, Comm'rs Rep. & Rec. (Del. Super. Ct. June 1, 2012)) Petitioner filed an objection to the Report and Recommendation. The Superior Court adopted the Report and Recommendation and denied Petitioner's Rule 61 motion on August 21, 2012. *See Hester*, 2012 WL 3608713, at *5. He did not appeal that decision. Petitioner filed a petition for a writ of habeas corpus, which the Superior Court denied on December 3, 2012. (D.I. 32 at 5)

## II.    LEGAL STANDARDS

### A.    The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford*, 538 U.S. at 206.

## B.    Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts
> of the State; or
>
> (B)      (i) there is an absence of available State corrective process; or
>          (ii) circumstances exist that render such process ineffective to
> protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give

"state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also*

*Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement

by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either

on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d

Cir. 1997); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "Fair presentation of

a claim means that the petitioner must present a federal claim's factual and legal substance to the

state courts in a manner that puts them on notice that a federal claim is being asserted." *Holloway v.*

*Horn*, 355 F.3d 707, 714 (3d Cir. 2004).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules

preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d

Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although technically exhausted, such claims

are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the procedural default and actual prejudice resulting therefrom. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *see Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt, *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002). A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial,"

5

showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## III.   DISCUSSION

Petitioner timely filed the instant habeas Petition challenging his February 2011 guilty plea to second degree assault. (D.I. 2; D.I. 5)   Although the bulk of the Petition asserts arguments unrelated to Petitioner's February 2011 guilty plea, the Petition appears to assert the following two grounds for relief with respect to his February 2011 conviction for second degree assault: (1) his speedy trial rights were violated; and (2) defense counsel provided ineffective assistance.   Petitioner also filed a subsequent amendment to the petition. (D.I. 10)   The State filed an Answer asserting that the Court should deny the Petition because the two Claims asserted therein are procedurally barred from Federal habeas review. (D.I. 32)   The State also notes that the amendment to the petition (D.I. 10) asserts arguments regarding an entirely different state court conviction from the one being challenged in this proceeding.   Therefore, the Court will only consider the arguments presented in the original Petition.[1]

The record reveals that Petitioner failed to exhaust state remedies for Claims One and Two, because he did not file a direct appeal or a post-conviction appeal.   At this juncture, any attempt by Petitioner to obtain further state court review of Claim One by filing a direct appeal would be time-barred by Delaware Supreme Court Rules 6(a)(iii).   *See* Del. Sup. Ct. R. 6(a)(iii) (imposing 30-day period for filing criminal appeal).   Any attempt to obtain further state court review of Claims One or Two via a new Rule 61 motion would be time-barred under Delaware Superior Court Criminal Rule 61(i)(1), as well as procedurally defaulted under Rule 61(i)(3).   *See* Del. Sup. Ct. Crim. R. 61(i)(1), (3).

---

[1]Petitioner also filed a document titled "Petition for Writ of Error Coram Nobis." (D.I. 41)   Since this document asserts arguments completely unrelated to the conviction and sentence at issue in this proceeding, the Court will not address the issues presented therein.

Given these circumstances, Claims One and Two are procedurally defaulted, meaning that the Court cannot review the merits of the claims absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

Petitioner attempts to establish cause for his procedural default by asserting that he was unconstitutionally denied representation by counsel during his Rule 61 proceeding under *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). (D.I. 19 at 1-2) This attempt is unavailing. In *Martinez*, the Supreme Court held for the first time that the absence of counsel or the inadequate assistance of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 1320. Since Claim One does not allege ineffective assistance of counsel, the narrow exception to the procedural default doctrine under *Martinez* does not apply. Petitioner does not assert any other reason for his default of this Claim. Thus, Petitioner has failed to demonstrate cause for his procedural default of Claim One

Additionally, even though the arguments in Claim Two are premised on the alleged ineffective assistance of defense counsel, and Petitioner was not represented by counsel during his Rule 61 proceeding, the narrow *Martinez* exception to the procedural default doctrine does not provide Petitioner with a method of establishing cause for his procedural default of Claim Two. As previously explained, *Martinez* provides that the absence of counsel or the inadequate assistance of counsel ***during an initial-review state collateral proceeding*** may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *See Martinez*, 132 S.Ct. at 1320; *Trevino v. Thaler*, 133 S.Ct. 1911, 1918, 1921 (2013); *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015) ("*Martinez* made very clear that its exception to the general rule of *Coleman* applies only to attorney error causing procedural default during initial-review collateral proceedings, not collateral appeals."). Here, the arguments in Claim Two were presented in Petitioner's initial collateral review proceeding,

7

and were only waived on collateral appeal due to his failure to file a collateral appeal. Therefore, *Martinez* is inapplicable, and the fact that Petitioner was not represented by counsel during his Rule 61 proceeding does not establish cause for his default.

In order to satisfy the prejudice portion of the "cause and prejudice" standard of the procedural default doctrine, a petitioner must demonstrate prejudice under *Coleman*. *See Coleman*, 501 U.S. at 750. When the underlying claim is for ineffective assistance of counsel, and that claim falls outside the narrow *Martinez* exception, the standard for demonstrating prejudice sufficient to overcome a procedural default is whether there is a reasonable probability that, but counsel's errors, the result of the proceedings would have been different. *See Werts*, 228 F.3d at 193; *see also Strickland v. Washington*, 466 U.S. 668, 694 (1984). In the context of a guilty plea, a petitioner establishes prejudice by showing a reasonable probability that he would not have pled guilty and would have insisted on going to trial but for counsel's errors. *See Hill v. Lockhart*, 474 U.S. 52 (1985).

In this case, Petitioner asserts that defense counsel was operating under a conflict of interest while representing him because Petitioner had filed a federal lawsuit against defense counsel alleging ineffective assistance, and because defense counsel moved to withdraw from Petitioner's direct appeal in another criminal proceeding. (D.I. 5 at 2, 8) As explained below, in limited ineffective assistance of counsel cases, a court may presume prejudice under *Strickland* if an actual conflict of interest existed between defense counsel and the petitioner. Since the prejudice standard for excusing a procedural default of an ineffective assistance of counsel claim is the same as the prejudice standard for establishing ineffective assistance,[2] the Court liberally construes Petitioner's allegation that defense counsel represented him while operating under a conflict of interest as an attempt to establish that the prejudice portion of the cause and prejudice test should be presumed.

---

[2]*See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

(D.I. 5 at 2) Thus, even though Petitioner's failure to establish cause eliminates the Court's need to determine prejudice, the Court will briefly address the issue.[5]

In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court explained that the prejudice required by *Strickland* can be presumed if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 350. *Cuyler* and subsequent Supreme Court jurisprudence regarding actual conflicts of interest arose in the context of an attorney's representation of multiple clients, where "the conflict exists between the interests of one defendant and the interests of other defendants served by the same attorney." *Government of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984). However, in 1983, the Third Circuit expressly extended *Cuyler* to conflict of interest cases other than those arising in the multiple representation context, such as when counsel's personal interests are "'inconsistent, diverse, or otherwise discordant' with those of his client and [those interests] affected the exercise of his professional judgment on behalf of his client." *Zepp*, 748 F.2d at 135. As explained by the Third Circuit, an "actual conflict" arising from defense counsel's active representation of conflicting interests is established by showing (1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. *See United States v. Morelli*, 169 F.3d 798, 810 (3d Cir. 1999). Although the Supreme Court questioned the applicability of *Cuyler* to conflicts arising outside the context of multiple representation in its 2002 decision *Mickens v. Taylor*, and opined that it remains an open question whether *Cuyler* should be extended to other

---

[5]The *Cuyler* presumption of prejudice is typically applied when analyzing the **merits** of an ineffective assistance of counsel claim, not when determining if the **procedural default** of an ineffective assistance of counsel claim can be excused. However, given the convoluted nature of Petitioner's arguments, the Court will exercise prudence and analyze Petitioner's conflict of interest argument in the context of his procedural default.

kinds of conflict of interest cases,[4] the Third Circuit has not addressed the effect of *Mickens* on its holding in *Zepp*. Therefore, the Court assumes that *Zepp*'s extension of *Cuyler*'s doctrine regarding actual conflicts of interest applies in Petitioner's case.

Nevertheless, Petitioner's *Cuyler* argument for presuming prejudice is unavailing. First, the fact that the federal civil suit Petitioner filed against defense counsel was still pending during his state criminal proceeding in this case does not, on its own, demonstrate that a *per se* actual conflict of interest existed or adversely affected defense counsel's performance. *See, e.g., Winfield v. Roper*, 460 F.3d 1026, 1040 (8th Cir. 2006) (holding that defendant's civil lawsuit against defense counsel does not *per se* create actual conflict). Notably, after extensive discussion about the federal civil suit during Petitioner's final case review on August 9, 2010, the Superior Court concluded that no conflict of interest existed between Petitioner and defense counsel, and denied Petitioner's motion to replace defense counsel. (D.I. 2 at 176-180) Petitioner has not provided anything in this proceeding to rebut the Superior Court judge's factual finding that Petitioner's federal civil suit against defense counsel did not create a conflict of interest in his state criminal proceeding. In fact, the federal civil suit against defense counsel was dismissed as frivolous on September 13, 2010 and, during his February 2011 guilty plea colloquy, Petitioner confirmed that he was satisfied with defense counsel's representation in the state criminal proceeding underlying this case. (D.I. 34, Plea Colloquy and Sentencing Transcript dated February 10, 2011, at 4) Given this record, the Court concludes that defense counsel was not operating under a conflict of interest as a result of Petitioner's pending federal civil suit.

Moreover, even if the Court were to presume there was a conflict of interest, Petitioner has failed to demonstrate that the conflict adversely affected defense counsel's performance. Petitioner

---

[4]*Mickens v. Taylor*, 535 U.S. 162, 175-76 (2002).

has not provided some plausible alternative defense strategy that defense counsel could have pursued but did not because it was inherently in conflict with defense counsel's other interests. Notably, Petitioner was facing eighty years to life in prison if he was convicted and found to be a habitual offender, but defense counsel obtained an extremely favorable plea agreement that resulted in an eight year sentence, to be suspended after five years for decreasing levels of probation. *See Hester*, 2012 WL 3608713, at *4. For these reasons, the Court concludes the *Cuyler* exception is inapplicable, and prejudice cannot be presumed.

Since Petitioner has not demonstrated cause and prejudice, the only way in which Claims One and Two can be reviewed on the merits by this Court is if Petitioner were to demonstrate that a failure to do so will result in a miscarriage of justice. The miscarriage of justice exception to the procedural default doctrine is unavailable here, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One and Two as procedurally barred from Federal habeas review.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

11

## V.   CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is **DENIED**.  An appropriate Order will be entered.